**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **ELDERHOME LAND, LLC,** | ) | **Case No. 21-10492-MCR** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| **BURTONSVILLE CROSSING, LLC** | ) | **Case No. 21-10491-MCR** |
| | ) | **Chapter 11** |
| Debtor. | ) | |
| | ) | **Jointly Administered Under** |
| | ) | **Case No. 21-10492-MCR** |
| | ) | |
| | ) | |

## SECOND AMENDED JOINT PLAN OF REORGANIZATION
### (ElderHome Land, LLC and Burtonsville Crossing, LLC)

ElderHome Land, LLC and Burtonsville Crossing, LLC, Debtors and Debtors-In-Possession (the "Debtors"), jointly propose the following Second Amended Joint Chapter 11 Plan of Reorganization (this "Plan") to resolve the outstanding Claims against, and Equity Interests, in the Debtors. The Debtors (together, the "Plan Proponents") have the right to modify the Plan before or after confirmation and before consummation of the Plan, but only in accordance with the Bankruptcy Code. All Holders of Claims against the Debtors, absolute or contingent, including all Claims arising from the rejection of Executory Contracts and/or Unexpired Leases, and all Holders of Equity Interests in the Debtors shall be bound by the provisions of the Plan.

The Plan is structured to ensure the maximum possible return to Creditors while also ensuring the continuation of the Debtors' business and the strengthening of its finances, which will serve as a source of payments to Creditors on their Claims.

Reference is made to the Joint Disclosure Statement (the "Disclosure Statement"), filed contemporaneously with the Plan, for a summary and analysis of the Plan.

## ARTICLE I
### DEFINITIONS

1.01   Rules of Interpretation. Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, the feminine or the neuter gender shall include the masculine, the feminine and the neuter. The words, "herein," "hereof," "hereto," "hereunder" and others of similar import,

refer to the Plan as a whole and not to any particular section, subsection, clause or paragraph contained in the Plan. Captions and headings to Articles, sections, paragraphs and exhibits are included for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan. The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the Plan. In the event of any inconsistency between or among the Plan, the Disclosure Statement and the Confirmation Order, the Plan shall take precedence over the Disclosure Statement, and the Confirmation Order shall take precedence over the Plan and the Disclosure Statement.

    1.02   <u>Definitions</u>. Unless the context requires otherwise, the following words and phrases shall have the meaning set forth below when used in an initially capitalized form in the Plan. Any word or phrase used in the Plan that is not defined in the Plan will have the meaning ascribed to that term in or under the Bankruptcy Code or the Bankruptcy Rules:

    "<u>Administrative Expense</u>" shall mean, collectively, (a) any cost or expense of administration of the Chapter 11 Cases allowable under sections 503, 507(a)(2), or 507 (b) of the Bankruptcy Code, including, without limitation, the fees and expenses of professionals employed by the Debtors pursuant to Article II of the Plan (including without limitation costs and expenses arising from and after the Confirmation Date through the Effective Date), and (b) any fees or charges assessed against the Debtors' Estates under Section 1930, Title 28, United States Code.

    "<u>Administrative Claims Bar Date</u>" shall mean the date that is thirty (30) days after the Effective Date. The Administrative Claims Bar Date shall not constitute a bar against (a) Professional Fee Claims for any Administrative Expense for services rendered in connection with the Chapter 11 Case, or (b) payment of any fees or charges assessed against the Debtors' Estates under Section 1930, Title 28, United States Code, whether accruing prior to or after the Administrative Claims Bar Date.

    "<u>Allowed</u>" shall mean, except as otherwise provided herein: (a) a Claim of any kind that has been allowed by a Final Order; (b) a Claim of any kind that is either not Disputed or otherwise subject to an objection as of the Claims Objection Bar Date; (c) a Claim that has been scheduled by the Debtors in its Schedules other than those scheduled as disputed, contingent (except as identified herein) or unliquidated and is not Disputed or is otherwise subject to an objection as of the Claims Objection Bar Date; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed before the entry of the Confirmation Order and approved by the Bankruptcy Court; (ii) in any stipulation with the Debtors of the amount and nature of Claim or Equity Interest executed on or after the entry of the Confirmation Order; or (iii) in or pursuant to any contract, instrument, or other agreement entered into or assumed in connection herewith; (e) a Claim that is allowed pursuant to the terms hereof; or (f) a Disputed Claim as to which a proof of Claim was timely filed and as to which no objection has been filed as of the Claims Objection Bar Date.

    "<u>Avoidance Action</u>" shall mean any cause of action arising in these Chapter 11 Cases to avoid a transfer of property of the Debtors or the Debtors' Estates or to recover such property, or the value of such property, pursuant to Sections 542, 543, 544, 545, 547, 548, 549, 550 and/or 551 of the Bankruptcy Code, or to recover damages or other monetary relief on account of any violation of the automatic stay pursuant to Section 362 of the Bankruptcy Code.

"Bankruptcy Code" shall mean Title 11 of the United States Code.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Maryland.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

"Bar Date", with respect to non-governmental entities shall mean July 26, 2021, which was the date set by the Bankruptcy Court as the last day by which a creditor that is a non-governmental entity is permitted to file a proof of claim and, with respect to governmental entities, the date that is 180 days after the Petition Date.

"Burtonsville Crossing" shall mean Burtonsville Crossing, LLC, one of the joint Debtors in these Chapter 11 Cases.

"Burtonsville Crossing Property" shall mean approximately 11 acres of land owned by Burtonsville Crossing, LLC, and located in Montgomery County, Maryland, next to Burtonsville Crossing Shopping Center.

"Causes of Action" means, other than Avoidance Actions, any and all claims, actions, adversary proceedings, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled as an asset of the Debtors, disputed or undisputed, legal or equitable, absolute or contingent, that are already pending or that have accrued or are accruing to the Debtors or the Estates, or that may be pursued derivatively by or on behalf of the Debtors or the Estates.

"Chapter 11" shall mean Chapter 11 of the Bankruptcy Code.

"Chapter 11 Cases" shall mean the above-captioned Chapter 11 bankruptcy cases of ElderHome Land, LLC and Burtonsville Crossing, LLC.

"Claim" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

"Claimant" shall mean any entity (as defined in the Bankruptcy Code) holding or asserting a Claim against the Debtors.

"Claims Objection Bar Date" means the date by which the Debtors or any other party in interest must object to a Claim, proof of which was timely filed by the applicable Bar Date.

"Class" shall mean any class of Creditors or Interest Holders as established by the Plan.

"Confirmation Date" shall mean the date the Bankruptcy Court enters the Confirmation Order.

"Confirmation Hearing" shall mean the hearing held pursuant to Section 1128 of the Bankruptcy Code with respect to the Plan.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan.

"Creditor" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

"Debtors" shall mean, together, ElderHome Land, LLC and Burtonsville Crossing, LLC. Debtors and "Reorganized Debtors" are sometimes used interchangeably, but mean the same thing for purposes of the Plan.

"Debtor-In-Possession" shall mean the Debtors in their capacity as debtors in possession in these Chapter 11 Cases pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

"Debtor's Bankruptcy Counsel" shall mean the law firm of Hirschler Fleischer, PC.

"Disclosure Statement" shall mean the Joint Disclosure Statement for use in connection with the Plan and distributed to holders of Claims entitled to vote for the purpose of acceptance or rejection of the Plan, as amended, restated or supplemented.

"Disputed" shall mean any Claim or any portion thereof which is not Allowed or Disallowed and which is (i) filed for which no amount was scheduled by the Debtors in the Schedules; (ii) filed in an amount or priority different than was scheduled by the Debtors in the Schedules; (iii) scheduled as unliquidated, contingent or disputed; (iv) a duplicate of another Claim; or (v) the subject of a pending application, motion, complaint, objection, or any other legal proceeding seeking to disallow, limit, subordinate, or estimate such Claim. A Claim is also a Disputed Claim if the Debtors have named the Holder of the Claim as a defendant or a counterclaim defendant in any legal or other proceeding.

"Disallowed" when used with respect to a Claim, means a Claim that has been disallowed by a Final Order.

"Discount Termination Date" shall mean that date that is sixty (60) days after the Plan Payment Date.

"Eagle Litigation" shall mean *Elderhome Land, LLC, et al. v. Eagle Commercial Ventures, LLC, et al.*, Adversary Proceeding No. 22-00090, pending before the Bankruptcy Court.

"Effective Date" means thirty (30) days following the date on which the Confirmation Order becomes a Final Order.

"ElderHome Land" shall mean ElderHome Land, LLC, one of the joint Debtors in these Chapter 11 Cases.

"ElderHome Land Property" shall mean approximately 5.86 acres +/- of commercial property owned by ElderHome Land, LLC, and is the site of a proposed senior housing project.

"Estate(s)" shall mean the Chapter 11 bankruptcy estate of the Debtor(s).

"Executory Contract or Unexpired Lease" means a contract or lease to which the Debtors are a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

"Equity Interest" shall mean the membership interests in ElderHome Land, LLC and Burtonsville Crossing, LLC.

"Final Order" shall mean an order or judgment of the Bankruptcy Court which has not been reversed, stayed, modified or amended, and (a) as to which the time to appeal or seek reconsideration or rehearing thereof has expired; (b) in the event a motion for reconsideration or rehearing is filed, such motion shall have been denied by an order of the Bankruptcy Court or other applicable court; or (c) in the event an appeal is filed and pending, a stay pending appeal has not been entered.

"General Unsecured Claims" shall mean Unsecured Claims that are not entitled to any priority or administrative treatment.

"Holder" shall mean any holder of a Claim in the Debtors.

"Impaired" refers to any Claim or Interest that is impaired within the meaning of Sections 1123(a)(4) and 1124 of the Bankruptcy Code with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

"Interest Holder" shall mean any holder of an Equity Interest in the Debtors.

"MIG Allowed Claim" shall mean the Allowed Secured Claim of Millenium Investment Group, LLC as provided in section 3.03 of the Plan.

"MIG Litigation" shall mean *Elderhome Land, LLC, et al. v. Millenium Investment Group, LLC*, Adversary Proceeding No. 21-00204, pending before the Bankruptcy Court.

"Petition Date" shall mean January 25, 2021, the date that the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

"Plan" shall mean this Second Amended Joint Plan of Reorganization, including the exhibits and schedules hereto, either in its present form or as it may be amended, supplemented or modified from time to time in accordance with the provisions of the Plan, the Bankruptcy Code and the Bankruptcy Rules.

"Plan Payment Date" shall mean the date that is sixty (60) days after the Effective Date of the Plan.

"Priority Unsecured Claim" shall mean all Claims entitled to priority under Section 507 of the Bankruptcy Code, other than Priority Tax Claims.

"Priority Tax Claim" shall mean any Claim entitled to priority pursuant to Section 507(a)(8) of the Bankruptcy Code.

"Professional(s)" shall mean any professional employed in the Bankruptcy Case pursuant to Sections 327, 330 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses from the Debtors in connection with the Chapter 11 Case pursuant to Sections 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

"Professional Fee Claim" shall mean the Claims of a Professional under sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in these Chapter 11 Cases.

"Properties" means, together, the ElderHome Land Property and the Burtonsville Crossing Property.

"Pro Rata" means, unless the Plan specifically provides otherwise, with respect to Claims, the proportion that the amount of a Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

"Rejection Claims Bar Date" shall mean the first to occur of (1) a bar date set pursuant to Court order that governs the filing of a claim arising from the rejection of an Unexpired Lease or an Executory Contract; (2) the Claims Bar Date, to the extent that an Unexpired Lease or Executory Contract was rejected prior to the Claims Bar date; or (3) thirty (30) days following the Confirmation Date.

"Rejection Damage Claim" shall mean any Claim for damages arising from or in connection with the rejection of an Executory Contract or Unexpired Lease.

"Reorganized Debtor(s)" shall mean the Debtor(s), as reorganized pursuant to the Plan, on and after the Effective Date, which shall be vested with the rights and obligations to carry out the provisions of the Plan.

"RLUIPA Litigation" shall mean the litigation pursued under the Religious Land Use and Institutionalized Person Act of 2000, captioned *Canaan Christian Church, et al. v. Montgomery County, Maryland*, which was appealed to the United States Court of Appeals for the Fourth Circuit, Case No. 20-2185, together with any further proceedings before the United States Supreme Court or any other court relating thereto.

"Secured Claim" shall mean any Claim to the extent that it is determined to be secured pursuant to Section 506(a) of the Bankruptcy Code.

"Unsecured Claim" shall mean any Claim, to the extent that it is not determined to be a Secured Claim.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE
## EXPENSE AND PRIORITY TAX CLAIMS

2.01    Administrative Expenses. Except as set forth below, each holder of an Allowed Administrative Expense shall be entitled to payment in full in cash upon the later of (a) the

Effective Date, (b) the date on which an order of the Bankruptcy Court allowing such Administrative Expense becomes a Final Order, or (c) the date, or dates, on which the Plan Proponents and the holder of such Allowed Administrative Expense agree or have agreed. Any final request for payment of an Administrative Expense must be filed no later than thirty (30) days after the Effective Date. The Administrative Claims Bar Date shall not constitute a bar to Professional Fee Claims, whether accruing prior to or after the Administrative Claims Bar Date. Requests for payment of Administrative Expenses shall be made by motion or application, as applicable, pursuant to the rules of the Bankruptcy Court. Notice of such motion or application for the allowance or payment of any Administrative Expense Claim shall be given to the Debtors, Debtors' Bankruptcy Counsel, the Office of the United States Trustee and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002. The failure to file a motion or application for the allowance of any Administrative Expense on or before the Administrative Claims Bar Date shall constitute a bar against the assertion or collection of any such Administrative Expense, and shall relieve the Debtors' Estate and the Reorganized Debtors from any liability, responsibility or obligation with respect to such Administrative Expense. Notwithstanding the foregoing, the Debtors may, in their sole discretion, pay Administrative Expenses incurred in the ordinary course of the Debtors' business without motion or Court order. Administrative Expenses paid by Holders of Class 7 and Class 8 Equity Interests shall be treated as provided in sections 4.07 and 4.08 of the Plan.

   2.02   <u>Professional Fee Claims</u>. Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must, unless previously filed, file and serve on Debtors' Bankruptcy Counsel, the Office of the United States, and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002, an application for final allowance of such Professional Fee Claim no later than thirty (30) days after the Effective Date. Professional Fee Claims shall be paid on the later of: (a) the Effective Date; (b) the date on which an order of the Bankruptcy Court allowing such Administrative Expense becomes a Final Order; or (c) the date, or dates, on which the Debtors and the Professional(s) may agree. Any party in interest may object to a Professional Fee Claim. All fees and expenses earned by Debtors' professionals subsequent to the Confirmation Date shall be paid by the Debtors as earned and billed without need for further approval of the Bankruptcy Court.

   2.03   <u>U.S. Trustee's Fees</u>. The Debtors shall pay to the United States Trustee, at the time such payments are due, all fees owed under 28 U.S.C. § 1930(a)(6) for disbursements by the Debtors from the Petition Date through the date on which the case is closed or converted to a case under Chapter 7. The Debtors will be responsible for disbursing any such payments to the Office of the U.S. Trustee as owed, and reporting such disbursements under applicable rules.

   2.04   <u>Priority Tax Claims</u>. Allowed Priority Tax Claims, if any, shall be paid in full by the Debtors on or before the later of (i) closing on the sale of one or more of the Properties or (ii) the Effective Date.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

   Pursuant to Section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and Interests. Administrative Expense Claims are addressed in Article II, above,

and have not been classified and are excluded from the following classes in accordance with Section 1123(a)(1) of the Bankruptcy Code.

3.01    Class 1: (Secured Tax Claim of Montgomery County Against ElderHome Land) ($8,312.20). Class 1 consists of the Secured Tax Claim of Montgomery County, Maryland in the amount of $8,312.20, together with accrued interest at the legal rate, arising out of unpaid real property taxes against the ElderHome Land Property for the period of 2019 through 2021. Class 1 is Unimpaired.

3.02    (Secured Tax Claim of Montgomery County Against Burtonsville Crossing) ($5,188.85). Class 2 consists of the Secured Tax Claim of Montgomery County, Maryland in the amount of $5,188.85, together with accrued interest at the legal rate, arising out of unpaid real property taxes against the Burtonsville Crossing Property for the period of 2019 through 2021. Class 2 is Unimpaired.

3.03    (Secured Claim of Millenium Investment Group, LLC against ElderHome Land and Burtonsville Crossing) ($4,982,108.68). Class 3 consists of the Secured Claim of Millenium Investment Group, LLC ("MIG") in the disputed amount of $4,982,108.68. The Class 3 Claim is secured by the Properties. The Debtors dispute the amount of the Class 3 Claim. The Class 3 Claim shall be allowed in the amount of $3,350,000, except as otherwise provided in section 4.03 of the Plan (the "MIG Allowed Claim"). Class 3 is Impaired.

3.04    (Post-Petition Secured Claim of SC210034, LLC, against ElderHome Land and Burtonsville Crossing) ($860,000.00 maximum). Class 4 consists of the Post-Petition Secured Claim of SC210034, LLC in the estimated maximum amount of $860,000.00. The Class 4 Claim is secured by a lien on and against substantially all assets of the Debtors, subordinate only to the lien(s) of the Holder of the Class 3 Secured Claim. Class 4 is Impaired.

3.05    (General Unsecured Claims against ElderHome Land) ($24,945.00). Class 5 consists of the General Unsecured Claims filed against and/or scheduled by ElderHome Land in the aggregate amount of approximately $24,945.00. The Debtors reserve the right to object to these Claims and nothing herein shall constitute an admission that these claims are Allowed. Class 5 is Impaired.

3.06    (General Unsecured Claims against Burtonsville Crossing) ($325.00). Class 6 consists of the General Unsecured Claims filed against and/or scheduled by Burtonsville Crossing in the aggregate amount of approximately $325.00. Class 6 is Unimpaired.

3.07    (Equity Interests in ElderHome Land). As of the Petition Date, the membership interests in ElderHome Land were owned by Thomas Norris (48%), Elizabeth Norris (48%), and Kimberly Seeley (4%). Class 7 is Impaired but cannot vote to accept or reject the Plan.

3.08    (Equity Interests in Burtonsville Crossing). As of the Petition Date, the membership interests in Burtonsville Crossing were owned by Thomas Norris (46%), Elizabeth Norris (46%), and Kimberly Seeley (8%). Class 8 is Impaired but cannot vote to accept or reject the Plan.

**ARTICLE IV**
**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

The Plan will be funded from a refinance of the Properties; the sale of the Burtonsville Crossing Property; the recovery of economic damages against Montgomery County in the RLUIPA Litigation; new value contributions from the Equity Interest Holders on a monthly and quarterly basis, and /or the sale of the Properties, as more fully set forth in the Plan. A summary of the treatment of Claims and Equity Interests is set forth below. The Debtors reserve the right to object to the validity, priority or extent of Claims, as set forth in the Plan.

Creditors are expected to receive a distribution based on the priority of their liens, if any, and consistent with the provisions of the Plan and the Bankruptcy Code. The treatment of each class of Claims and Equity Interests is more specifically set forth below.

4.01     Treatment of Class 1 (Secured Tax Claim of Montgomery County, Maryland, Against ElderHome Land) ($8,312.20). Class 1 consists of the Secured Tax Claim of Montgomery County, Maryland in the approximate amount of $8,312.20, together with accrued interest at the legal rate. The Class 1 Secured Tax Claim shall be paid in full by ElderHome Land upon a sale or refinance of the ElderHome Land Property.

Class 1 is Unimpaired under the Plan, and is not entitled to vote to accept or reject the Plan.

4.02.     Treatment of Class 2 (Secured Tax Claim of Montgomery County, Maryland, Against Burtonsville Crossing) ($5,188.85). Class 2 consists of the Secured Tax Claim of Montgomery County, Maryland in the approximate amount of $5,188.85, together with accrued interest at the legal rate. The Class 2 Secured Tax Claim of Montgomery County, Maryland shall be paid in full by Burtonsville Crossing upon a sale or refinance of the Burtonsville Land Property.

Class 2 is Unimpaired under the Plan, and is not entitled to vote to accept or reject the Plan.

4.03     Treatment of Class 3 (Secured Claim of Millenium Investment Group, LLC against ElderHome Land and Burtonsville Crossing ($4,982,108.68). Class 3 consists of the *Disputed* Secured Claim of Millenium Investment Group, LLC secured by the Properties. As of the Petition Date, MIG alleged a secured claim in the amount of $4,982,108.68, consisting of principal in the amount of $2,800,000.00, interest in the amount of $1,799,775.05, and fees and costs in the amount of $382,333.63, evidenced by (i) that certain Promissory Note dated May 22, 2018 in the original principal amount of $2,800,000; (ii) that certain Deed of Trust dated May 22, 2018 recorded among the Land Records of Montgomery County, Maryland at Liber 56087, folio 216, encumbering the Properties; and (iii) that certain Modification of Deed of Trust dated May 22, 2018 recorded among the Land Records of Montgomery County, Maryland at Liber 57006, folio 279 (collectively, the "MIG Loan Documents").

MIG shall retain its liens (the "MIG Liens") on the ElderHome Land Property and the Burtonsville Crossing Property until the MIG Allowed Claim is paid as provide herein. On the Effective Date, MIG shall release the MIG Liens on all non-Debtor assets and release its claims against all non-Debtor related parties of the Debtors.

Except as otherwise provided herein, the MIG Allowed Claim shall be in the amount of $3,350,000. The MIG Allowed Claim shall be discounted (i) to $2,900,000 if paid on or before

the Plan Payment Date; or (ii) to $3,100,000 if paid on or before the Discount Termination Date. If the MIG Allowed Claim, as discounted herein, is paid on or before the Discount Termination Date, no MIG Interest, MIG Fees or MIG Costs, as defined herein, shall be payable in connection with the MIG Allowed Claim.  The MIG Allowed Claim shall not be subject to surcharge by any bankruptcy trustee.

In the event the MIG Allowed Claim, as discounted, is not paid by theDiscount Termination Date, the MIG Allowed Claim shall accrue interest at the rate of twelve percent 12% per annum ("MIG Interest"), which MIG Interest shall be calculated from the Effective Date until the MIG Allowed Claim is paid in full.  In the event the MIG Allowed Claim, as discounted, is not paid by the Discount Termination Date, MIG shall also be entitled to recover those MIG Fees ("MIG Fees") (including reasonable attorneys' fees) and MIG Costs ("MIG Costs") incurred by MIG after the Effective Date as provided under the MIG Loan Documents. For the avoidance of doubt, any fees or costs incurred or chargeable under the MIG Loan Documents prior to the Effective Date of the Plan (such as loan origination fees, late fees, additional interest, additional attorneys' fees of 15%) are not included within the definition of "MIG Fees," "MIG Costs," and "MIG Interest" as used herein.

In the event (a) the MIG Allowed Claim, as discounted, is not paid by the Discount Termination Date, and (b) the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs as provided herein, is not paid in full by the first anniversary of the Effective Date, the ElderHome Land Property shall be sold at an auction (the "Auction") pursuant to the provisions of section 7.02 of the Plan.

In the event (a) the MIG Allowed Claim, as discounted, is not paid by the Discount Termination Date, (b) the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs as provided herein, is not paid in full by the first anniversary of the Effective Date, and (c) the Burtonsville Crossing Property has not previously been sold by the Debtors, the Burtonsville Crossing Property shall also be sold at an Auction pursuant to the provisions of section 7.02 of the Plan.

Class 3 is Impaired under the Plan, and is entitled to vote to accept or reject the Plan.

4.04    Treatment of Class 4 (Secured Claim of SC210034, LLC against ElderHome Land and Burtonsville Crossing) (Estimated to be a maximum of $860,000.00).  Class 4 consists of the Post-Petition Secured Claim of SC210034, LLC against ElderHome Land and Burtonsville Crossing in the estimated principal amount of $500,000.00, plus, if the Class 4 Claim is paid in full on or before July 31, 2022, an additional $360,000.00 in fees and costs.  Pursuant to the SC210034 Agreement, the actual amount of the Class 4 Claim shall be calculated based on the "Purchaser's Restructuring Return" plus the "Purchaser's Share," as those terms are defined in the SC210034 Agreement.  The Class 4 Claim is secured by a post-petition lien on substantially all assets of the Debtors, subordinate only to the MIG Liens and any other valid, properly perfected senior liens and tax liens, as set forth more fully in the Amended and Restated Prepaid Forward Purchase Agreement dated as of August 23, 2021 (the "SC210034 Agreement") approved by the Bankruptcy Court by Order dated August 27, 2021 [Dkt. No. 78].

The Class 4 Allowed Secured Claim shall be paid in full within three (3) business days of receipt by the Debtors of any cash "Litigation Proceeds," as that term is defined in the SC210034 Agreement, but, in any event, no later than the "Restructuring Date" of August 31, 2023, subordinate only to the payment of Allowed Claims in Class 1, 2 and 3. The Class 4 Allowed Secured Claim shall be paid upon a sale or refinance of the ElderHome Land Property.

SC210034, LLC shall retain its liens until the SC210034, LLC Allowed Secured Claim is paid in full. In the event the ElderHome Land Property and/or the Burtonsville Crossing Property is sold at the Auction, the liens of SC210034 shall attach to the proceeds of sale and shall be subordinate to the MIG Liens.

Class 4 is Impaired under the Plan, and is entitled to vote to accept or reject the Plan.

4.05     Treatment of Class 5 (General Unsecured Claims Against ElderHome Land, ($24,945.00). Class 5 consists of General Unsecured Claims filed against and/or scheduled by ElderHome Land in the amount of approximately $24,945.00. In full and final satisfaction and discharge of each Allowed Class 5 Claim, each Holder of an Allowed Class 5 Claim shall receive payment on a *pro-rata* basis, in quarterly installments of $3,125.00 per quarter, funded by new value contributions made by one or more of the Holders of Equity Interest in the Debtors, beginning on the first day of the calendar quarter following the Effective Date, and continuing on the first day of each quarter thereafter until the Allowed Class 5 Claims are paid in full. In the event of a sale, refinance or Auction of the ElderHome Land Property and/or the Burtonsville Crossing Property prior to the payment in full of all Allowed Class 5 Claims, the net proceeds of such sale, refinance, or Auction shall be applied to the outstanding balance of such Allowed Class 5 Claims after payment in full of the Allowed Claims in Class 1, 2 and 3 and all closing cost associated with such sale, refinance, or Auction. The aforementioned payments to the Holders of Class 5 Allowed General Unsecured Claims against ElderHome Land shall be in full and final satisfaction of their Allowed Claims. The Debtors reserve the right to object to these Claims and nothing herein shall constitute an admission that these claims are Allowed.

Class 5 is Impaired under the Plan, and is entitled to vote to accept or reject the Plan.

4.06     Treatment of Class 6 (General Unsecured Claims Against Burtonsville Crossing, $325.00). Class 6 consists of General Unsecured Claims filed against and/or scheduled by Burtonsville Crossing in the amount of approximately $325.00. In full and final satisfaction and discharge of each Allowed Class 6 Claim, each Holder of an Allowed Class 6 Claim shall receive payment in full on the Effective Date through new value contributions made by one or more of the Holders of Equity Interest in the Debtors. The Debtors reserve the right to object to these Claims and nothing herein shall constitute an admission that these claims are Allowed.

Class 6 is Unimpaired under the Plan, and is not entitled to vote to accept or reject the Plan.

4.07     Treatment of Class 7 (Equity Interests in ElderHome Land). Class 7 consists of the Equity Interests in ElderHome Land. As of the Petition Date, the membership interests in ElderHome Land were owned by Thomas Norris (48%), Elizabeth Norris (48%), and Kimberly Seeley (4%).

Class 7 Equity Interests in ElderHome Land shall be extinguished upon the Effective Date, and new equity interests shall be issued in the Reorganized Debtors ("New Interests"). The Equity Interest Holders will purchase their New Interests in the Reorganized Debtors, in part, by making new value contributions to the Plan in the aggregate amount of up to $3,125.00 per quarter, beginning on the first day of the calendar quarter following the Effective Date, and continuing on the first day of each quarter thereafter, to be used to fund distributions to Holders of Class 5 Allowed General Unsecured Claims, together with new value contributions in the aggregate amount of up to $5,000 per month to cover ongoing operational expenses of ElderHome Land, LLC and up to approximately $26,000.00 as and when needed to cover the cost of procuring additional project entitlements for the Elderhome Land Property.

In addition to the aforementioned new value contributions, all amounts advanced to, or paid for the benefit of, the Debtors by the Holders of Equity Interests in Class 7 (i) prepetition as unsecured loans, and (ii) post-petition to pay Administrative Expenses in connection with the Chapter 11 Cases and the operations of the Debtors through the Effective Date, shall be treated as additional new value contributions to purchase the New Interests in the Reorganized Debtors.

Class 7 is Impaired, but is not entitled to vote because the Holders of Equity Interests in Class 7 will not retain or acquire any property under the Plan on account of their Equity Interests. As such, Class 7 is deemed to reject the Plan.

4.08    Treatment of Class 8 (Equity Interests in Burtonsville Crossing). Class 8 consists of the Equity Interests in Burtonsville Crossing. As of the Petition Date, the membership interests in ElderHome Land were owned by Thomas Norris (46%), Elizabeth Norris (46%), and Kimberly Seeley (8%).

Class 8 Equity Interests in Burtonsville Crossing shall be extinguished upon the Effective Date, and New Interests shall be issued in the Reorganized Debtors. The Equity Interest Holders will purchase their New Interests in the Reorganized Debtors, in part, by making new value contributions to the Plan in the amount of $325.00 on the Effective Date to fund distributions to Holders of Class 6 Allowed General Unsecured Claims, together with new value contributions in the amount of up to $5,000 per month to cover ongoing operational expenses of Burtonsville Crossing, LLC.

In addition to the aforementioned new value contributions, all amounts advanced to, or for the benefit of the Debtors by the Holders of Equity Interests in Class 8 (i) prepetition as unsecured loans, and (ii) post-petition to pay Administrative Expenses in connection with the Chapter 11 Cases and the operations of the Debtors through the Effective Date, shall be treated as additional new value contributions to purchase the New Interests in the Reorganized Debtors.

Class 8 is Impaired, but is not entitled to vote because the Holders of Equity Interests in Class 8 will not retain or acquire any property under the Plan on account of their Equity Interests. As such, Class 8 is deemed to reject the Plan.

**Article V**
**Disputed Claims and Interests**

12

5.01    <u>Bar Date</u>.  Any Claim in existence as of the Bar Date that was not scheduled by the Debtors, or that is scheduled as contingent, unliquidated or disputed, or that varies in amount, nature or priority from that stated in the Debtors' Schedules, must have been asserted, if at all, by the filing of a Proof of Claim with the Bankruptcy Court no later than the Bar Date.  The failure to have filed a Proof of Claim by the Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtors and the Debtors' Estate from any liability, responsibility or obligation with respect to such Claim.  Without limiting the generality of the foregoing, no distribution shall be made pursuant to the Plan with respect to any Claim that was not filed by the Bar Date or scheduled by Debtors, or that has been Disallowed by virtue of an objection to such Claim.

5.02    <u>Objections to Claims</u>.  Objections to Claims, if any, must be filed no later than ninety (90) days after the Effective Date, unless such deadline is extended by order of the Bankruptcy Court.  Settlement of Disputed Claims shall be subject to notice to the Debtors, Debtors' Bankruptcy Counsel, the Office of the United States, and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002.

5.03    <u>Distributions on Account of Disputed Claims</u>.  No distribution shall be made in respect to a Disputed Claim until and unless such Disputed Claim becomes an Allowed Claim.  The Debtors (as the case may be) shall be authorized to reserve from any distribution to creditors under the Plan funds sufficient to pay Disputed Claims.

5.04    <u>Claims Arising as a Result of Avoided Transfers</u>.  Any Claim arising as a result of an order or a judgment entered on or after the Confirmation Date determining that a transfer of property of the Debtors is avoidable pursuant to Chapter 5 of the Bankruptcy Code must be pursued by the filing of a Proof of Claim not later than thirty (30) days following the entry of the order or judgment that gives rise to such Claim.  The failure to file or deliver a Proof of Claim by such date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtors and the Debtors' Estates from any liability, responsibility or obligation with respect to such Claim.  Nothing in this Section shall be construed to mean that the entry of an order or judgment avoiding a transfer of the Debtors' property, under Chapter 5 of the Bankruptcy Code or otherwise, gives rise to an Allowable Claim, and the right to object to any such Claim is hereby reserved.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  Unless previously rejected by order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, or by operation of law, or assumed through the provisions of the Plan, on the Effective Date, all Executory Contracts and Unexpired Leases shall be rejected pursuant to Bankruptcy Code section 365.  The Confirmation Order shall constitute an order of the Bankruptcy Court approving assumptions and rejections pursuant to section 365 of the Bankruptcy Code**.**  Notwithstanding the foregoing, absent an Order of the Bankruptcy Court to the contrary, the Confirmation Order shall constitute an assumption of the contract of sale between Burtonsville Crossing and Canaan Christian Church, as modified or extended.  No cure payments are believed to be due to the counter-parties of the Executory Contracts and Unexpired Leases.

In addition to the foregoing, all insurance policies shall remain in full force and effect unless otherwise validly terminated, and issuers of such policies of insurance shall remain responsible for claims in accordance with the terms and provisions of such insurance policies. The insurance policies that have expired as of the Confirmation Date (whether entered into prior or subsequent to the Petition Date) are not executory contracts subject to assumption or rejection. The issuers of insurance policies shall be responsible for continuing coverage obligations under such insurance policies, regardless of the payment status of any retrospective or other insurance premiums.

6.02    <u>Claims Arising from the Rejection of Executory Contracts and Unexpired Leases</u>. Any Rejection Damage Claim arising from the rejection of an Executory Contract or Unexpired Lease by operation of the Plan must be asserted by the filing of a Proof of Claim with the Bankruptcy Court, and the service of such Proof of Claim on the Debtors' Bankruptcy Counsel. Such Proof of Claim must be filed with the Bankruptcy Court, and received by Debtors' Bankruptcy Counsel no later than the Rejection Claims Bar Date.  Any Allowed Rejection Damage Claim shall be treated, as applicable, as a Class 5 or Class 6 Claim in accordance with Article IV of the Plan.  The failure to file or deliver a Rejection Damage Claim by the Rejection Claims Bar Date shall constitute a bar against the assertion or collection of any such Claim, and shall relieve the Debtors and the Debtors' Estate from any liability, responsibility or obligation with respect to such Claim.  Without limiting the generality of the foregoing, no distribution shall be made pursuant to the Plan with respect to any Rejection Damage Claim that is not filed and delivered by the Rejection Claims Bar Date.

## ARTICLE VII
## IMPLEMENTATION OF PLAN

7.01 <u>Revesting of Assets</u>.  Except as otherwise expressly provided in the Plan or by Order of the Bankruptcy Court, on the Effective Date, all assets of the Debtors shall be revested in the Reorganized Debtors as provided in section 1141 of the Bankruptcy Code free and clear of all liens, security interests, recording taxes, and other interests, choate or inchoate, resulting from all Claims and Equity Interests of all Creditors, Interest Holders and parties-in-interest.  For the avoidance of doubt, except as otherwise set forth by Order of the Bankruptcy Court, the Holders

of Allowed Secured Claims shall retain their liens until such Secured Claims are paid in accordance with the terms of the Plan.

7.02   Funding.  Sufficient equity exists in the assets of the Debtors to pay all Allowed Claims in full, from one or more of the following sources: (i) a refinance of the Properties; (ii) the recovery of economic damages against Montgomery County in the RLUIPA litigation; (iii) the sale of the Properties; and (iv) new value contributions by the Holders of Equity Interests.  These funding sources will be sufficient to also pay ongoing operating expenses, including property taxes, insurance, US Trustee fees, and administrative expenses.

The Burtonsville Crossing Property shall be sold to Canaan Christian Church pursuant to the existing contract thereon, which contract is currently in litigation and on appeal before the U.S. Court of Appeals for the Fourth Circuit.  Notwithstanding the preceding sentence, if the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs as provided in section 4.03 of the Plan, has not been paid in full as of the first anniversary of the Effective Date, the Burtonsville Crossing Property shall be sold at the Auction pursuant to the provisions set forth herein.  Subject to MIG's right to credit bid and its right to object to a sale proposed by the Debtors (other than a sale pursuant to the existing contract with Canaan Christian Church), upon any arm's length sale or refinance of the Burtonsville Crossing Property at any time prior to the payment in full of the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs if closing on such sale or refinance occurs after the Discount Termination Date, at the closing on such sale or refinance, the net proceeds thereof, after payment of all usual and customary closing costs and commercially reasonable deductions, shall be paid to MIG as a partial payment of the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs if the closing on such sale or refinance occurs after the Discount Termination Date .

In the event (a) the MIG Allowed Claim, as discounted, is not paid by the Discount Termination Date, and (b) the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs as provided in section 4.03 of the Plan, is not paid in full by the first anniversary of the Effective Date, the ElderHome Land Property (and the Burtonsville Crossing Property if not previously sold as provided herein) shall be sold at an Auction.  The Auction shall be conducted by SC&H Group, or another auctioneer with comparable expertise and experience conducting auctions of real property such as the ElderHome Land Property and the Burtonsville Crossing Property.  The Auction shall not occur more than fifty-five (55) days thereafter without the express consent of MIG.  At the Auction, MIG shall be entitled to credit bid up to the full amount of the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs.

If an Auction is conducted, the purchaser at the Auction shall receive title to the ElderHome Land Property (and the Burtonsville Crossing Property, if applicable) free and clear of all liens, claims and encumbrances.  In the event MIG is not the purchaser at the Auction, at closing thereon, the net proceeds of sale at the Auction shall be paid to MIG up to the amount of the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs and the MIG Liens shall be released upon receipt of payment at closing.

In the event purchaser at the Auction does not receive insurable and marketable title to the ElderHome Land Property (and the Burtonsville Crossing Property, if applicable) free and clear of all liens, claims, encumbrances, real property taxes, or other clouds on title, then the Reorganized

Debtors consent to the immediate appointment of a chapter 11 bankruptcy trustee to control the disposition of the ElderHome Land Property (and the Burtonsville Crossing Property, if applicable), if requested by MIG to satisfy the MIG Allowed Claim, together with MIG Interest, MIG Fees and MIG Costs, subject to the MIG Liens.

7.03    Reorganized Debtor.  The Reorganized Debtor shall have all rights, duties and powers set forth in the Plan, including, without limitation, the duty to review and object to Claims and make distributions pursuant to the terms of the Plan and the Confirmation Order.  The Reorganized Debtor shall have all the powers of a trustee under the Bankruptcy Code.  On the Effective Date, the Reorganized Debtor may employ counsel and other professionals as may be reasonably necessary for its operations and to execute the Plan without the necessity of application to the Bankruptcy Court.  Such professionals may be retained and compensated for post-Effective Date services in the ordinary course without the necessity of application to the Bankruptcy Court.

From and after the Effective Date of the Plan, the Reorganized Debtors shall, at the same time that they submit their Post-Confirmation Quarterly Reports to the Office of the United States Trustee, provide quarterly post-confirmation evidence concerning the entitlements and permitting of the ElderHome Land Property, including documentation related to permits and variances and the associated fees with respect thereto (the "Quarterly Updates").  In the event of a dispute between the Reorganized Debtors and MIG with respect to the content of any Quarterly Update, the parties shall submit such dispute to resolution by the Bankruptcy Court and agree to be bound by the Bankruptcy Court's ruling with respect thereto.

The Reorganized Debtors shall continue to pay in a timely fashion all post-petition real property taxes assessed on the ElderHome Land Property and the Burtonsville Crossing Property as and when such taxes come due.

On the first anniversary of the Effective Date, the Reorganized Debtors shall obtain a title update on the ElderHome Land Property (and the Burtonsville Crossing Property if not previously sold) to determine whether any liens, claims, encumbrances, real property taxes or other clouds on title exist that would prevent an Auction purchaser from receiving marketable title.  To the extent any such liens, claims, encumbrances, real property taxes or other clouds on title exist upon receipt of the title update, it shall be the sole responsibility of the Reorganized Debtors to take the necessary steps to ensure that insurable and marketable title can be conveyed at any Auction conducted pursuant to section 7.02 of the Plan.

7.04    Distributions.  Except with respect to Holders of Allowed liens which shall be paid at closing pursuant to the Plan or Order of the Bankruptcy Court, the Debtors shall make all distributions under the Plan in cash made by check drawn on a domestic bank or by wire transfer from a domestic bank.  Subject to the provisions of Bankruptcy Rule 2002(g) and except as otherwise provided under the Plan, the Debtors will make distributions to Holders of Allowed Claims at each Holder's address set forth on the Schedules filed with the Bankruptcy Court unless superseded by a different address set forth in a timely filed proof of Claim filed by the Holder or if the Debtors have been notified in writing of a change of address at the following address.

7.05    Corporate Action.  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the members, stockholders, directors or comparable

governing bodies of the Debtors, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtors are incorporated or organized, without any requirement of further action by the members, stockholders or directors (or other governing body) of the Debtors. On the Effective Date, or as soon thereafter as is practicable, (i) the Debtors' articles of incorporation and bylaws, or if applicable operating agreement, shall, to the extent necessary, be amended to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code and otherwise in a manner not inconsistent with the Plan, and (ii) the Debtors shall take all actions necessary to implement the Plan.

As of the Effective Date, Thomas Norris and Elizabeth Norris shall manage the Reorganized Debtors and shall continue to oversee the business operations of the Reorganized Debtors. Nothing herein or in the Confirmation Order, including any releases, shall diminish or impair the enforceability of any policy of insurance that may cover claims against the Debtors. Each of the matters provided for under the Plan involving the business structure of the Reorganized Debtors or action to be taken by or required of the Reorganized Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the member of the Reorganized Debtors. The Reorganized Debtors shall operate under their current names under the organizational documents issued by the State of Maryland.

7.06    <u>Small Distributions and Unclaimed Funds</u>. The Debtors shall not be required to make a distribution on account of any Claim, which distribution would be less than $25.00 in amount. Subject to the notice provision set forth herein, any payment that is not negotiated one-hundred eighty (180) days after the date on which it is mailed may be stopped, and the funds made available for distribution to other Creditors pursuant to the Plan. Any payment that is returned as undeliverable may be voided, and the funds represented by such payment made available for distribution to other Creditors pursuant to the Plan. In the event that payment of an initial distribution is returned as undeliverable or is not negotiated within one-hundred eighty (180) days after it is mailed, the Debtors shall not be required to make any further distributions to such Creditor under the Plan, and the funds that otherwise would have been distributed to such Creditor may be made available, in the Debtors' discretion, as applicable, for distribution to other Creditors pursuant to the Plan.

7.07    <u>Preservation of Rights of Action/Settlement of MIG Litigation</u>. On the Effective Date, the Debtors shall retain the sole right to commence or continue any and all Causes of Action and Avoidance Actions on behalf of the Estate. Any recovery, after payment of fees and expenses, obtained from any such action shall be made available for distribution to Holders of Claims in there priority, subject to Section 7.09(b) of the Plan.

On the Effective Date of the Plan, the adversary proceeding captioned *Elderhome Land, LLC, et al. v. Millenium Investment Group, LLC*, Adversary Proceeding No. 21-00204, shall be dismissed with prejudice and general releases in favor of MIG shall be provided by the Debtors. All proceedings in all courts by MIG against the non-Debtor related parties of the Debtors shall likewise be dismissed with prejudice and general releases in favor of the non-Debtor related parties will be provided by MIG.

7.08    <u>Set off and Recoupment</u>.  The Debtors may, but shall not be required, to set off against any Claims (for purposes of determining the Allowed amount of such Claim on which distribution shall be made) of any nature whatsoever that the Debtors may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim the Debtors may have against the Holder of such Claim.

7.09    <u>Disputed Claim Procedure</u>.

*(a) Authority to Prosecute Objections*

After the Effective Date, the Debtors, Creditors and parties-in-interest shall be entitled to object to all Claims.  Objections to Claims, if any, must be filed no later than ninety (90) days after the Effective Date, unless such deadline is extended by order of the Bankruptcy Court.  Settlement of Disputed Claims shall be subject to notice to the Debtors, Debtors' Bankruptcy Counsel, the Office of the United States, and to Creditors and parties in interest who have requested notice pursuant to Bankruptcy Rule 2002.

*(b) No Distributions on Disputed or Disallowed Claims*

Except as may otherwise be ordered by the Bankruptcy Court or authorized under the terms of the Plan, the Debtors shall not make distributions to Holders of Disputed Claims until the Disputed Claim become an Allowed Claim.  The Debtors shall make no distributions to holders of Disallowed Claims.

*(c) Late Claims Void*

Unless otherwise expressly allowed by Order of the Bankruptcy Court or otherwise provided by the Plan, any Claim filed after the applicable Claims Bar Date will be void and of no force or effect, and will receive no distributions under the Plan.

7.10    <u>Exculpation.</u>  The Debtors and their respective officers and/or directors (including their respective Professionals)(collectively, the "Exculpation Parties") shall not have any liability to any Holder of a Claim for any act or omission occurring after the Petition Date and through the Effective Date in connection with, related to, or arising out of the Chapter 11 Cases, including, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation the Plan, or the administration of the Estate or the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

7.11    <u>Conditions Precedent to the Effective Date.</u>  The following are conditions precedent to the Effective Date of the Plan: (a) the Bankruptcy Court has entered the Confirmation Order in a form reasonably acceptable to the Debtors; (b) the Confirmation Order becomes a Final Order; and (c) all of the other actions needed to be taken or documents needed to be executed or approved to implement the Plan, have been taken, executed, or approved.  The Plan Proponents, in their sole discretion, may jointly waive any of the foregoing conditions and deem the Plan effective without their occurrence.

If each of the conditions to the occurrence of the Effective Date has not been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court upon request by the Debtors.  If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtors.

7.12    <u>Retention of Jurisdiction</u>.  The United States Bankruptcy Court shall retain exclusive jurisdiction after Confirmation of the Plan of all matters arising from or related to the Plan, for as long as necessary for the purpose of §§105(a), 1127, 1142(b) and 1144 of the Bankruptcy Code and for, <u>inter alia</u>, the following purposes:

(a)    hear and determine motions, applications, adversary proceedings, and contested matters pending or commenced after the Effective Date;

(b)    hear and determine objections to Claims (whether filed before or after the Effective Date), or requests for estimation of any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

(c)    estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim, including any pending appeal;

(d)    ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(e)    enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(f)    issue or construe such orders or take any action as may be necessary for the implementation, execution, enforcement and consummation of the Plan and the Confirmation Order, and hear and determine disputes arising in connection with the foregoing;

(g)    hear and determine any applications to modify the Plan, to cure any defect or omission or to reconcile any inconsistency in the Plan, the Disclosure Statement, or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

(h)    hear and determine all applications for Professional Fee Claims;

(i)    hear and determine other issues presented or arising under the Plan, including disputes among holders of Claims and arising under agreements, and the documents or instruments executed in connection with the Plan;

(j)    hear and determine any action concerning the recovery and liquidation of the assets of the Estates, wherever located, including without limitation, litigation to liquidate and recover the assets of the Estates or other actions seeking relief of any sort with respect to issues relating to or affecting the assets of the Estates;

(k)      hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtors or the Estates including, without limitation, matters concerning federal, state, and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code;

(l)      Resolve any dispute between the Reorganized Debtors and MIG with respect to the content of any Quarterly Update, as provided in section 7.03 of the Plan; and

(m)      enter the Final Decree.

## ARTICLE VIII
## EFFECTS OF CONFIRMATION

8.01   <u>Discharge of Claims and Interests</u>.  Except as otherwise expressly provided by the Plan, the Confirmation of the Plan (subject to the occurrence of the Effective Date) shall discharge the Debtors to the extent provided in Section 1141(d) of the Bankruptcy Code from all debts that arose on or before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not a Proof of Claim is filed or is deemed filed, whether or not such Claim is Allowed, and whether or not the holder of such Claim voted with respect to the Plan.  Except as otherwise expressly provided by the Plan, all property of the Debtors' Estates shall, upon entry of the Confirmation Order, be vested in the Reorganized Debtors and will be retained by the Reorganized Debtors on the Effective Date.  All such property shall be free and clear of all Claims and the Interest of Creditors and other parties-in-interest, except as otherwise set forth in the Plan.

8.02   <u>Disallowance of Certain Charges</u>.  Except as otherwise provided in the Plan, all penalties, default interest or late fees that may have accrued on any Claim prior to the Confirmation Date are disallowed.

8.03   <u>Provisions Cumulative</u>.  The provision set forth in Sections 8.01 are in addition to, and not in lieu of, any other release or exculpation separately given or received, conditionally or unconditionally, by or from the Debtors or the Debtors-In-Possession, to or from any other person or entity.

## ARTICLE IX
## MISCELLANEOUS PROVISIONS

9.01   <u>Modification of Plan</u>.  The Plan Proponents, as appropriate, reserve the right to modify the Plan pursuant to Section 1127 of the Bankruptcy Code.  Before or after the Confirmation Date, or in the Confirmation Order, the Debtors may, with the approval of the Court, so long as it does not materially and adversely affect the interests of creditors who have accepted the Plan, remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan, in such a manner as may be necessary to carry out the purposes and the effect of the Plan without the necessity of re-soliciting acceptances.

9.02    Revocation of Plan.  The Plan Proponents may revoke or withdraw the Plan at any time prior to the Effective Date.  If the Plan is revoked or withdrawn, or the Confirmation Order is not entered, the Plan shall be null and void.

9.03    Computation of Time.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.04    United States Trustee Fees.  Any fees payable under 28 U.S.C.  § 1930 accruing after the Effective Date shall be timely paid by the Reorganized Debtors.

9.05    Notices.  On and after the Effective Date, all notices, requests and distributions to a Holder of a Claim or Equity Interest shall be sent to the last known address of (i) the holder or its attorney of record as reflected in the holder's proof of Claim or Administrative Claim filed by or on behalf of such Holder, or (ii) in the absence of an address provided under (i), the address listed in the Debtors' Schedules.  Any Holder of a Claim or Equity Interest may designate another address by providing Debtors written notice of such address, which notice will be effective upon receipt by the Debtors of the written designation.  Notice to the Debtors shall be directed to:

> ElderHome Land, LLC and Burtonsville Crossing, LLC
> Attn: Thomas Norris
> P.O.  Box 310
> Ashton, Maryland 20861
>
> With a copy to:
>
> Lawrence A.  Katz, Esq.
> Hirschler Fleischer, P.C.
> 8270 Greensboro Drive
> Suite 700
> Tysons, VA  22102

9.06    Section 1146 Exemption.  To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the vesting, transfer or sale of any property (real or personal) of the Debtors pursuant to, in implementation of or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

9.07    Severability.  If any provision of the Plan is determined to be unenforceable, such determination shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

9.08    Manner of Payment.  Payments provided hereunder may be made, at the option of the Debtors, in cash, by wire transfer or by check drawn on any money market center bank.

9.09    Further Actions and Assurances.  All persons bound by the Plan, including without limitation all Creditors and parties in interest and persons to be paid under or pursuant to the Plan,

shall execute and deliver such releases and documents of transfer and assignment as the Debtors may reasonably request to effectuate the terms of the Plan.  In addition to other remedies, the Debtors may condition or withhold payment to any person who fails to execute and deliver such documents or instruments as the Debtors may reasonably request to effectuate the terms of the Plan.

9.10    <u>Successors and Assigns</u>.  The rights, benefits and obligations of any Person or Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or Entity.

9.11    <u>Governing Law</u>.  Unless a rule of law or procedure is supplied by (i) Federal law (including the Bankruptcy Code and Bankruptcy Rules), or (ii) an express choice of law provision in any agreement, contract, instrument or document provided for, or executed in connection with, the Plan, the rights and obligations arising under the Plan and any agreements, contracts, documents and instruments executed in connection with the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland without giving effect to the principles of conflict of laws thereof.

9.12    <u>Confirmation Pursuant to sections 1129(a)(10) and 1129(b) of the Bankruptcy Code</u>.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by an impaired Class.  If any class of Claims or Equity Interests entitled to vote on the Plan does not accept the Plan pursuant to section 1126(c), the Debtor reserves the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code and to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

Dated:  March 29, 2022                     */s/ Lawrence A. Katz*
                                           Lawrence A. Katz, Md. Federal Bar No. 02526
                                           Hirschler Fleischer, PC
                                           8270 Greensboro Drive Suite 700
                                           Tysons, Virginia  22102
                                           Telephone:  703-584-8362
                                           Facsimile:  703-584-8901
                                           lkatz@hirschlerlaw.com

                                           *Counsel for Debtors*

14994146.1  046750.00001