# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# (Greenbelt Division)

| | |
|---|---|
| **In re:** <br><br> **ELDERHOME LAND, LLC,** <br><br> Debtor. | Case No. 21-10492-MCR <br> (Chapter 11) |
| **In re:** <br><br> **BURTONSVILLE CROSSING, LLC** <br><br> Debtor. | Case No. 21-10491-MCR <br> (Chapter 11) <br><br> Jointly Administered under <br> Case No. 21-10492-MCR |

## OPPOSITION TO MOTION TO MODIFY CONFIRMED
## SECOND AMENDED JOINT PLAN OF REORGANIZATION

Gerard R. Vetter, the Acting United States Trustee for Region 4 ("United States Trustee"), by counsel, files this Opposition to the Motion to Modify Confirmed Second Amended Joint Plan of Reorganization ("Motion to Modify") filed by Burtonsville Crossing, LLC ("Burtonsville") and ElderHome Land, LLC ("ElderHome" and collectively, with Burtonsville, the "Debtors") because the Second Amended Joint Plan of Reorganization ("Plan") may not be modified as it has been substantially consummated. In support of this Opposition, the United States Trustee states as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction to hear and decide the Motion to Modify and Opposition. 28 U.S.C. § 1334.

2. The United States Trustee has standing to raise this Opposition pursuant to 11 U.S.C. § 307 and is entrusted with monitoring the progress of cases filed under chapter 11 pursuant to 28 U.S.C. § 586(a)(3)(G).

## Background

3. The Debtors and their Properties are no strangers to the bankruptcy process, having initiated six prior bankruptcy cases since October 2017.[1]

4. After twenty months in the present contentious cases, the Debtors and MIG[2] reached a well-negotiated settlement that formed the basis of the Plan that the Court confirmed on September 8, 2022. Dkt. Nos. 217 and 239.

5. The Effective Date of the Plan was October 24, 2022.

6. The Plan was to be funded, *inter alia*, through either a refinancing of the secured debt that encumbers the Properties or the auction of the Properties. The Plan provides that if MIG "is not paid in full by the first anniversary of the Effective Date, the ElderHome Land Property [and Burtonsville Crossing Property] **shall be sold at an auction**. . . ." Plan at Dkt. No. 217, Sections 4.03 and 7.02 (emphasis added).

7. The Plan further requires that Classes 1-4 will be paid upon a sale or refinance of the ElderHome Property. Class 5, consisting of ElderHome General Unsecured Claims in the amount of approximately $24,945, was to be paid on a pro-rata basis, in quarterly installments of $3,125. Class 6, the General Unsecured Claims of Burtonsville in the amount of $325, was paid in full on the Effective Date. Classes 7 and 8 were the Equity Interests that were extinguished and then New Interests were issued in the Reorganized Debtors purchased by new value contributions.

8. On October 6, 2023, the Debtors filed the instant Motion to Modify stating that "despite the Debtors' continued and exhaustive efforts, the Debtors have been unable to secure the refinancing of the Properties." Motion to Modify at ¶ 16. As such, the Debtors are seeking

---

[1] *See In re ElderHome Land, LLC*, Case Nos. 17-24324, 17-26767, 20-19419 and *In re Burtonsville Crossing, LLC*, Case Nos. 17-24323, 17-26769, 20-19418.
[2] Capitalized terms used herein that are not defined shall have the meaning ascribed to them in the Motion to Modify.

to extend the deadline to satisfy the MIG Allowed Claim by six months for additional time to secure a refinancing on the Properties. *Id*.

9. The United States Trustee opposes the Motion to Modify because the Plan has been substantially consummated.

**Legal Argument**

10. A debtor's ability to modify a confirmed plan is subject to the limitations set forth in Section 1127 of the Bankruptcy Code.

11. Section 1127(b) creates a window during which the parties and the bankruptcy court may make changes to a confirmed plan. "The window is, however, limited. Indeed, 'Congress drafted § 1127(b) to safeguard the finality of plan confirmation. If this were not the case, a proponent of a plan could file an endless series of motions to modify the plan, at every bump in the road, seriously jeopardizing the incentive for creditors to vote in favor of a plan.'" *In re Archway Homes, Inc.*, 2013 WL 5835714 at *2-3 (Bankr. E.D.N.C. October 30, 2023) (quoting *In re Antiquities of Nev., Inc.*, 173 B.R. 926, 928 (9th Cir. BAP 1994)); *see also In re U.S. Repeating Arms Co.,* 98 B.R. 138, 140 (Bankr. D. Conn. 1989) (requirements of § 1127 were "established to promote finality and protect a creditor's reliance upon the terms of a plan in accepting it").

12. Section 1127(b) states that the reorganized debtor or proponent of the plan may only modify a confirmed plan before the plan is substantially consummated.

13. "Substantial consummation of a plan of reorganization turns on the facts of each case." *In re Dam Road Mini Storage*, 156 B.R. 270, 271 (Bankr. S.D. Cal. 1993) (*citing In re Jorgensen,* 66 B.R. 104, 106 (9th Cir. BAP 1986)). "The burden is on the proponent of modification to show that the plan has not been substantially consummated." *Id.* (citing *In re Modern Steel Treating Co.,* 130 B.R. 60, 64 (Bankr.N.D.Ill.1991)). The "purpose of the

3

substantial consummation requirement is to provide some finality to bankruptcy proceedings . . . ." *In re H & L Developers, Inc.*, 178 B.R. 77, 81 (Bankr. E.D. Pa. 1994).

14. In ruling on the Motion to Modify, the Debtors must prove that the Plan has not been substantially consummated. Section 1101(2) of the Bankruptcy Code defines substantial consummation as follows:

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
>
> (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
>
> (C) commencement of distribution under the plan.

11 U.S.C. § 1101(2).

15. The Debtors do not contest that Sections 1101(2)(A) and (B) have been met. Rather, the Debtors assert that "the Plan has not been substantially consummated under § 1101(2)(C) because commencement of a substantial portion of the distributions called for under the Plan has not yet occurred." Motion to Modify at ¶ 40. In essence, the Debtors are arguing that the Plan has not been substantially consummated because the Debtors' payments to the three secured creditors [Montgomery County (Classes 1 and 2), MIG (Class 3) and SC210034 (Class 4)] have not occurred because no refinance has occurred.

16. The Debtors' argument here is not unique and has been made by debtors without success in other jurisdictions. In *In re Dam Road Mini Storage*, 156 B.R. at 271, the bankruptcy court approved a plan that provided for the full payment to all creditors by selling or refinancing the debtor's two mini-storage facilities within three years. The debtor was unable to do so by the "drop dead date" and sought to modify its confirmed plan. The court addressed the threshold issue regarding whether the plan was substantially consummated. The debtor argued that the plan had not been substantially consummated because, *inter alia*, distributions to unsecured

4

creditors had not commenced and only 10.64% of the payments due under the plan had been made. The court denied the debtor's motion to modify the plan, as follows:

> [A] confirmed plan is a contract. The insolvency of the promisor does not discharge the duty to perform under the contract. No amount of financial constraint will, in and of itself, relieve the debtor of its obligations." *Modern Steel,* 130 B.R. at 65 (citations omitted). Thus, **the debtor's inability to refinance or sell the property by the "drop dead date" in order to pay its creditors is not a reason for modification under § 1127(b).**

(Emphasis added.)

17. That same reasoning applies here. The Debtors' inability to refinance the Properties by the date set forth in the Plan to pay its creditors is not a reason for modification under Section 1127(b). *Id*.

18. Similarly, *In re Archway Homes, Inc.*, the court held that "[a] debtor's inability to fund or refinance the provision of the confirmed plan does not, in and of itself, justify modification." 2013 WL 5835714 (Bankr. E.D.N.C. Oct. 30, 2013). In *Archway Homes*, the plan provided for the debtor to sell two parcels of real property by September 30, 2013, to pay its creditor, First Citizens Bank & Trust ("First Citizens"). The plan further provided that, in the event of default, First Citizens could foreclose on the properties. The debtor was unable to sell the properties and filed the motion to amend the plan and reinstate the automatic stay to prevent First Citizens from foreclosing. In denying the motion, the court stated that it was not difficult to find that the plan had been substantially consummated because of the steps that the debtor had taken toward bringing the plan to completion, which included commencing payments to various classes of creditors and assuming certain leases. *Id.* at *4. The *Archway Homes* Court held that "it would defy common sense if this court were to find that lack of payment to two of nine unsecured creditors, in the face of all the other steps that the debtor has diligently and

appropriately taken towards bringing the plan to completion, precluded a finding of substantial consummation." *Id*.

19. In the case at hand, the Debtors have taken substantial steps to bring the Plan to completion, including making cumulative disbursements to claims as follows:

**ElderHome**[3]

Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan

| | Total Anticipated Payments Under Plan | Paid Current Quarter | Paid Cumulative | Allowed Claims | % Paid of Allowed Claims |
|---|---|---|---|---|---|
| a. Administrative claims | $0 | $0 | $150,442 | $249,254 | 60% |
| b. Secured claims | $4,218,312 | $0 | $0 | $4,218,312 | 0% |
| c. Priority claims | $8,312 | $0 | $0 | $8,312 | 0% |
| d. General unsecured claims | $24,945 | $0 | $6,575 | $24,945 | 26% |
| e. Equity interests | $3,125 | $20,205 | $48,930 | | |

**Burtonsville**[4]

Part 3: Recoveries of the Holders of Claims and Interests under Confirmed Plan

| | Total Anticipated Payments Under Plan | Paid Current Quarter | Paid Cumulative | Allowed Claims | % Paid of Allowed Claims |
|---|---|---|---|---|---|
| a. Administrative claims | $0 | $0 | $25,000 | $99,974 | 25% |
| b. Secured claims | $4,215,189 | $0 | $0 | $4,215,189 | 0% |
| c. Priority claims | $5,189 | $0 | $0 | $5,189 | 0% |
| d. General unsecured claims | $325 | $0 | $325 | $325 | 100% |
| e. Equity interests | $0 | $13,154 | $34,759 | | |

20. In addition, the Debtors and their principals have reaped the benefits of the Plan.

21. As reflected above on the Debtors' Post-Confirmation Reports, filed on September 27, 2023, the Debtors' Equity Interests are one of the largest beneficiaries of the Plan by receiving $83,689 in total payments.

22. In addition, pursuant to Section 4.03 of the Plan, on the Effective Date, MIG was required to release its liens on all non-Debtor assets and release its claims against all non-Debtor

---

[3] ElderHome, Post-confirmation Report for quarter ending June 30, 2023, Case No. 21-10492, Dkt. No. 287.
[4] Burtonsville, Post-confirmation Report for quarter ending June 30, 2023, Case No. 21-10492, Dkt. No. 286.

6

related parties of the Debtors. *See* Plan at Section 4.03. Upon information and belief, MIG has upheld its end of the bargain and it should not be required to wait another six months for the Debtors to uphold their end of the agreement.

23. As cautioned by the court in *Archway Homes*, Congress drafted Section 1127(b) to safeguard the finality of plan confirmation. If not, a proponent of a plan could file an endless series of motions to modify the plan.

24. This guidance is particularly relevant to the present case. The Debtors contractually agreed in the Plan that if MIG was not paid in full by the first anniversary of the Effective Date, then the Properties **shall** be sold at an auction. This agreement was unequivocal, and the Debtors knowingly and consensually negotiated one year to secure a sale or refinance. As reflected in the Plan, it was specifically understood that the Debtors might face challenges in their refinancing efforts, and for that reason, the Plan expressly provides for that possibility. While it is unfortunate that the Debtors were unable to secure a refinance, an auction of the Properties is the outcome to which they agreed.

25. Further, there is no indication in the Motion to Modify that a refinance is even in prospect. If the Debtors were unable to secure a refinancing in one year, there are no assurances that they will be able to do so with an additional six months. Such a requested extension is nothing more than a breach of the Plan and may be the beginning of an endless series of motions to modify the Plan.

26. In the Motion to Modify, the Debtors assert that they have been met with "unforeseen extraordinary circumstances" that have hindered the planned refinancing due to EagleBank allegedly filing UCC continuation statements on June 13, 2023. Motion to Modify at ¶ 30. It is unclear how this issue negates the fact that the Plan has been substantially

consummated—the threshold issue as to whether the Plan can be modified under Section 1127(b).

27. Yet, even if the Court were to consider an exception to this prohibition, the agreement between the Debtors and MIG contemplated that the Debtors may face hurdles in their refinancing efforts, and yet, the parties executed the agreement knowing that there may be potential unknowns and other contingencies.

28. For these reasons, the United States Trustee opposes the Motion to Modify because the Plan has been substantially consummated.

29. Pursuant to Local Bankruptcy Rule 9013-6, the United States Trustee consents to final judgment orders in this matter by a bankruptcy judge.

WHEREFORE, the United States Trustee requests that the Court deny the Motion to Modify and for such other relief as is just and equitable.

Dated: October 16, 2023 **GERARD R. VETTER**
Acting United States Trustee for Region 4

By Counsel:

*/s/ Lisa Yonka Stevens*
Lisa Yonka Stevens, Bar No. 27728
Trial Attorney
Office of the United States Trustee
6305 Ivy Lane, Suite 600
Greenbelt, MD  20770
(301) 344-6216
Fax: (301) 344-8431
E-mail: Lisa.Y.Stevens@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2023, a true and correct copy of the Opposition to Motion to Modify Confirmed Second Amended Joint Plan of Reorganization was served by ECF notification,

- Shawn P. Cavenee    scavenee@rwclawyers.com, cremus@gordonsimmons.com
- Richard L. Costella    rcostella@tydings.com, jmurphy@tydings.com
- Alan M. Grochal    agrochal@tydingslaw.com, jmurphy@tydingslaw.com
- Zvi Guttman    zvi@zviguttman.com, zviguttman@gmail.com, zviguttman@outlook.com
- Lawrence A. Katz    lkatz@hirschlerlaw.com, llewis@hirschlerlaw.com; aklena@hirschlerlaw.com; ndysart@hirschlerlaw.com
- Thomas Jonathan Kokolis    tkokolis@pskfirm.com
- Michael J. Lichtenstein    mjl@shulmanrogers.com, tlockwood@shulmanrogers.com
- Alan Jay Perlman    aperlman@dickinson-wright.com, epeyton@dickinson-wright.com
- Roger Charles Simmons    rsimmons@gordonsimmons.com, dwise@gordonsimmons.com;jdziubla@gordonsimmons.com
- US Trustee - Greenbelt    USTPRegion04.GB.ECF@USDOJ.GOV

And by first-class mail, postage prepaid, to:

Marc Carmel
McDonald Hopkins, LLC
300 North LaSalle S.
Suite 1400
Chicago, IL 60654

Gregory R. Clucas
CL Group, LLC
103 Washington Street, #2A
Columbia, MD 21502

Discepolo, LLC
11253 Chase St. No.2
Fulton, MD 20759

Jacob R Dziubla
Gordon & Simmons, LLC
1050 Key Pkwy, Suite 101
Frederick, MD 21702-4496

Alan J. (Prohac) Perlman
350 East Las Olas Blvd., Suite 1750
Ft. Lauderdale, FL 33301

*/s/ Lisa Yonka Stevens*
Lisa Yonka Stevens